[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15205
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 7, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-02785-CV-PT-M

WILBERT PRICE,

Plaintiff-Appellant,

versus

M & H VALVE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 7, 2006)

Before DUBINA, HULL and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Wilbert Price appeals through counsel the district court's grant of summary judgment, pursuant to Fed.R.Civ.P. 56©), to his current employer, M & H Valve Company, a company that manufactures and sells valves and hydrants for commercial use, on his claims of failure to promote and disparate impact in training, based on race, filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 1981, and retaliation, filed pursuant to 42 U.S.C. § 2000e-3.[1] Price argues on appeal that the district court erred in concluding that summary judgment was warranted. For the reasons set forth more fully below, we affirm.

On June 30, 2003, Price, an African-American male whom M & H Valve first hired in 1972, filed a complaint against M & H Valve, pursuant to Title VII and § 1981, alleging that his employer (1) failed to promote him to multiple supervisory positions; (2) retaliated against him for signing a grievance alleging race discrimination by promoting three other African-American employees of M & H Valve to supervisory positions, instead of Price; and (3) failed to provide him with training opportunities that M & H Valve provided to Caucasian employees.

---

[1] M & H Valve also argues in its appellate brief that the court correctly granted it summary judgment as to Price's retaliation claims. As M & H Valve asserts, however, Price has not challenged this determination on appeal. Thus, we deem arguments on these claims abandoned. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) (explaining that issues not argued in initial brief are deemed abandoned).

Price attached to this complaint a copy of the charge of discrimination that he had filed with the Equal Employment Opportunity Commission ("EEOC") on May 5, 2001, in which he asserted that M & H Valve, (1) on February 10, 2001, and on a continuing basis, had denied him the opportunity to apply for a supervisory position, because of his race, by failing to advertise vacant supervisory positions and by promoting Caucasian employees, instead of more qualified African-American employees; and (2) had subjected him and other African-American employees to harassment through racial slurs, jokes, and different treatment.

After the parties completed discovery, M & H Value filed a Rule 56 motion for summary judgment on all of Price's claims. M & H Valve argued that Price's failure-to-promote claim relating to its hiring of William Watson in February 2001, was untimely under both Title VII and § 1983, because the record reflected that Watson actually was hired on February 23, 1999—approximately 494 days before Price filed his charge of discrimination with the EEOC and almost 4 years before Price filed his civil complaint. M & H Valve alternatively argued that Price could not establish a prima facie discrimination claim based on M & H Valve's promotion of Watson because, unlike Watson, Price had no supervisory experience and, thus, was not qualified for the position.

M & H Valve relied in support on (1) a deposition of Price, (2) a deposition of Roger Baldwin, M & H Valve's personnel manager, and (3) a declaration of Baldwin. Price testified in his deposition that he had begun working at M & H Valve on the yard crew in the foundry and, except for a few short periods during which he was laid off, had continued to work for M & H Valve through the present. In addition, he had worked in the cleaning room as a grinder, in the machine shop, where he ran a drill and the B through G machines, as a janitor, as a core-maker in the core room, and in the electric-melt department. Price, however, never had held a supervisory position.

Price also testified that, in January 1999, as a union-committee member, he signed a grievance that was presented to him by Jerry Summerlin, another African-American hourly employee at M & H Valve and the chairman of the local union. In this union grievance, Price, Summerlin, and several other African-American employees, including Rodney Chatman and Grady Calloway, claimed that M & H Valve had denied them promotions to supervisory positions at M & H Valve because of their race. Price signed this grievance because he believed that he should have been considered for a promotion to supervisory positions that M & H ultimately offered to three Caucasian men, that is, Wayne Gill, Mike Hatton, and James Putnam, in 1997 or 1998. Price also contended that M & H Valve

4

discriminated against him on December 23, 1999, when it hired Watson from "off the street" to work as a supervisor in the electric-melt department in the foundry.

Baldwin attested in his declaration that M & H Valve supervisors are salaried employees who supervise hourly employees to ensure that the employees perform their jobs and that the supervisor's department is operating efficiently and effectively. Supervisors also are (1) responsible for ensuring that hourly workers comply with company policies, (2) not members of the bargaining unit, (3) typically paid more than hourly workers and entitled to different benefits, and (4) evaluated and disciplined differently than hourly workers. In August 2003, Price expressed an interest in entering M & H Valve's newly implemented supervisor-training program at Jacksonville State University, which was developed by M & H Valve, Jacksonville State University, Gadsden State, and Pat Lynch.

Baldwin further attested that, as a prerequisite to enter this supervisor-training program, Price had to take a written examination given by Gadsen State and perform, on average, at the tenth-grade level in math, spelling, language, and reading. Because Price only performed at the 4.5, 1.3, and 5.7 grade levels in reading, language and spelling, and mathematics, respectively, he was deemed ineligible for this supervisor-training program. After Summerlin, Chatman, and Calloway signed the 1999 union grievance at issue in this case, they were

5

promoted to supervisory positions at M & H Valve. M & H Valve made these promotions after interviewing a list of candidates who were recommended by supervisors, and after determining that these employees were most qualified.

Price opposed M & H Valve's motion for summary judgment, arguing that, despite his experience and his displaying interest in supervisory positions, he was denied them when M & H Valve failed to give him the opportunity to be considered for them, while one Caucasian supervisor was promoted and one Caucasian supervisor was hired from outside M & H Valve in 2000 and 2001.[2] Price also contended that, although M & H Valve had designed its supervisor-training program to "make current employees eligible for supervisory positions," and although the EEOC had determined that Price was "a member of a class of blacks whom ha[d] been discriminated against regarding promotional opportunities based on their race," none of the current class in the supervisor-training program were African Americans.

---

[2] As evidence of his qualifications, Price cited to his deposition testimony that he had worked "virtually all over the plant," trained other M & H Valve employees, and trained through a four-year apprenticeship to become a journeyman core-maker. Price also cited to evidence showing that (1) M & H Valve never had expressed any complaints about his ability to train, (2) he had a "near perfect attendance record" and "virtually no disciplinary actions against him," and (3) Baldwin confirmed that, although he did not know if Price ever had been considered for a supervisory position, Baldwin knew that Price had displayed interest in such positions. Moreover, Baldwin agreed that, in August 2003, Price expressed an interest in entering M & H Valve's newly implemented supervisor-training program.

Additionally, Price asserted that summary judgment was not warranted as to his retaliation claim because he testified during his deposition that (1) less experienced African Americans, instead, were promoted after he filed a union grievance and an EEOC charge, (2) M & H Valve "tapped the shoulders of select African-American employees," (3) the African-American employees who received supervisory positions were told not to tell other employees about these promotions, and (4) only African-American employees were questioned by an M & H attorney about discrimination in the work place. Finally, Price contended that summary judgment was not warranted as to his harassment claim because (1) Wayne Gill, a Caucasian employee who was a "decision[-]maker in promoting" in the Foundry Department, had not been disciplined after making a racially derogatory statement about Price at work; and (2) Price had been called a "Sambo" at work.

M & H Valve then filed a supplemental motion for summary judgment, arguing that, to the extent Price was raising a failure-to-promote claim based on Chuck Yeager's promotion in October 2000, this promotion occurred almost three years before Price filed his complaint in October 2003, and, thus, was untimely under both Title VII and § 1981. M & H Valve alternatively argued that this claim failed because Price, who had no supervisory experience, could not show that he was as qualified, or more qualified, for the supervisory position than Yeager, who

7

had ten years' experience working on the CNC machines,[3] including four years' experience as a supervisor overseeing these machines.  M & H Valve contended that Price's retaliation claim, that he suffered retaliation when Wayne Gill, a supervisor at M & H Valve, was not disciplined after he allegedly made a race-related statement regarding Price, was without merit because Price could not show that he suffered an adverse employment action.  Moreover, M & H Valve argued that, to the extent Price was contending that the standardized test that M & H Valve was using to screen applicants for its supervisory-training program had a disparate impact on African-American employees, Price neither could produce sufficient supporting statistical evidence, nor show that M & H Valve's legitimate business reasons for the test were pretextual.

In support of this supplemental motion, M & H Valve cited to the evidence it previously had submitted, as well as to the supplemental declaration of Roger Baldwin, the declaration of Mike Fulmer, the machine-shop manager, the declaration of Chuck Yeager, and a memorandum opinion in a related case. Yeager testified during his deposition that, in the fall of 2000, when he was a CNC

_____

[3] Yeager testified during his deposition that (1) CNC refers to machines that are numerically controlled, (2) these machines must be programmed or "set up" before starting each different type of job the machine is intended to perform, (3) some CNC operators do not know how to perform these set-ups, (4) CNC set-ups are not easy to learn and usually take at least two to three months per machine to learn, and (5) some employees are unable to master these set-ups.

8

operator at M & H Valve, he became aware that a supervisor position in the machine shop on the second shift had become vacant. Yeager also stated that, because of his previous experience as a supervisor and his knowledge of the CNC machines, he believed he was qualified for the vacant position, and he submitted his resume to Fulmer. Fulmer similarly attested that Yeager was promoted based on his knowledge of CNC machines, his ten years' experience operating and setting up these machines, and his four years' supervisory experience.

Baldwin, in turn, elaborated in his supplemental declaration that M & H Valve instituted its supervisor-training program in July 2003, as part of its conciliation agreement with the EEOC, which had resulted from charges of discrimination filed by Price and other African-American employees relating to alleged disparate treatment in promotions at M & H Valve. Based on complaints that M & H Valve had "tapped the shoulders" of white employees in promoting employees, this training program was proposed to provide all qualified employees who were interested in supervisory positions with an avenue to improve on skills necessary for advancement. Joe Cavender, the Director of Adult Education Services at Gadsden State, suggested the use of the TABE[4] as a way to determine

_____

[4] Joe Cavender explained in his declaration that the TABE (1) is a norm-based examination that is used extensively throughout the United States, especially in adult-education programs, to determine the approximate grade level of the person tested; and (2) is one of only three tests that the State of Alabama has approved for examining applicants for adult-education

the applicants' eligibility for the program. Management at M & H Valve determined, based on the requirements of its supervisory positions, that a 10th-grade equivalency on the TABE would be a minimal level at which to begin the supervisory-training program. Baldwin further explained that this minimal testing level was implemented because: (1) the program cost $24,000 for each of its enrolled students; and (2) supervisors needed to do basic calculations, read and understand company policies and procedures, write clear and concise memoranda, and provide directions to the workforce.

In his response, Price newly argued that he established that M & H Valve failed to promote him, and, instead, promoted Dean Nance, a Caucasian male, as a supervisor "in 2000-2001." Explaining that M & H Valve's failure to discipline Gill was evidence of retaliatory intent, instead of actual retaliation, Price also again contended that M & H Valve retaliated against him by (1) promoting other African-American employees, instead of himself; and (2) directing its attorney to question him about discrimination claims. Without identifying specific training programs, Price also newly asserted that M & H Valve had failed to either (1) offer African-American employees training opportunities "necessary for advancement," or (2) conduct studies on whether the supervisory-training program reasonably

---

classes for persons seeking to obtain a General Education Degree ("GED").

10

related to the requirements of any supervisory position at M & H Valve. Finally, Price newly argued that summary judgment was not warranted because (1) Gill made a "racial slur" to Steve Caruso, and (2) a co-worker referred to Price as "Sambo" in the 1980s.

M & H Valve replied that, in addition to being entitled to summary judgment on Price's claim of discriminatory failure to promote relating to Yeager, summary judgment was warranted as to his newly raised claim relating to Nance because Nance was hired on August 23, 1999, more than four years before Price filed his civil complaint. M & H Valve contended that Price's claim that questioning by one of M & H Valve's attorneys constituted retaliation was without merit because, even assuming this questioning occurred, it did not constitute an adverse employment action. M & H Valve also argued that Price's new claims of disparate impact relating to its failure to train were due to be dismissed because Price had failed to (1) identify a training opportunity "necessary for advancement," other than the supervisory-training program; and (2) show that the supervisory-training program itself, instead of testing used to qualify for this training, had a disparate impact. Additionally, M & H Valve responded that Price's newly raised "racial slur" claims had no basis in Title VII or § 1981 and were untimely.

11

After extensively summarizing the evidence in the record and the parties' arguments, the court noted in a memorandum opinion that it was "very doubtful" if Price had established that he was minimally qualified for a supervisory position. Nevertheless, the court assumed, without deciding, that Price had established a prima facie case of failure to promote as to the CNC supervisor position that was awarded to Yeager, but that summary judgment was warranted on this claim because M & H Valve's articulated reason for this promotional decision, that is, that Yeager was more qualified for the position, was not pretextual. The court, however, ordered the parties to address further: (1) the proof necessary to establish Price's claim of disparate impact relating to training, (2) whether Price included in his EEOC complaint his discrimination claim relating to Nance's position, and (3) if the record contained evidence showing Nance's date of hire.

Following receipt of the parties' responses to this court order, the court granted M & H Valve summary judgment as to the majority of Price's claims and set a trial date only to address the factual issue of when M & H Valve hired Nance, a "comparator" employee. The court explained that, in accordance with the reasons it gave in its previous memorandum opinion, it was granting summary judgment as to, among other claims, Price's claim of failure to promote him to the position of CNC supervisor in October 2000, instead of Yeager. The court also

12

found that Price's claim of disparate impact as to training was due to be dismissed because (1) he had failed to include this claim in his EEOC complaint, and (2) § 1981 did not provide a basis for such a claim.

Because Price had failed to acknowledge that Nance's hire date was August 23, 1999, and that his claim relating to Nance, therefore, was time-barred, the court initially denied summary judgment as to this claim and set it for trial. Nevertheless, after Price notified the court that he was not contesting Nance's date of hire, the court determined that this remaining claim was time barred and granted in full M & H Valve's motion for summary judgment.

**Issue 1:    Price's claims of discriminatory failure to promote**

Price argues that the district court erred in granting M & H Valve summary judgment as to his discrimination claims because he established a prima facie case of discriminatory failure to promote and train himself and other African-American employees. Identifying as comparators two Caucasian employees who were promoted and hired in 2000 and 2001, and one Caucasian employee who was promoted to the position over the core-making machine in November of 2000,[5]

---

[5] Although Price has not identified the employee who was promoted to the position over the core-making machine in November of 2000, M & H Valve has acknowledged that this employee was Michael Smith. Nevertheless, because Price did not identify this "comparator" in the district court, we will not address this newly raised claim on appeal. See Access Now, 385 F.3d at 1331 (explaining that "an issue not raised in the district court and raised for the first time on appeal will not be considered by this [C]ourt").

13

Price contends that he was denied training "necessary for advancement" and received lower wages. Price asserts that these claims were not time-barred under § 1981 because he was subject to a four-year limitations period. Price contends that, although he did not technically apply for a promotion, M & H Valve used an informal, secretive selection process based on subjective criteria and Price, thus, still could raise an inference of intentional, racially disparate treatment. Price also is arguing that summary judgment was not warranted because he identified substantial evidence showing that M & H Valve's proffered reasons for not promoting him were pretextual.

As a preliminary matter, to the extent Price was relying on Title VII, before a plaintiff may pursue a Title VII discrimination claim, he first must exhaust his administrative remedies. Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). To exhaust his remedies, the plaintiff must file a timely charge of discrimination with the EEOC. Id. (citing 42 U.S.C. § 2000e-5(b)). To be timely within a non-deferral state, such as Alabama, it must be filed within 180 days of the last discriminatory act. 42 U.S.C. § 2000e-5(e)(1); Ledbetter v. Goodyear Tire and Rubber Co., Inc., 421 F.3d 1169, 1178 (11th Cir. 2005) (explaining that Alabama is a non-deferral state), petition for cert. filed, (U.S. Feb. 17, 2006) (No. 05-10721).

14

Here, Personnel Manager Baldwin and Nance, himself, testified that Nance was hired as a supervisor in the Machine Shop on August 23, 1999.[6] Yeager was promoted by M & H Valve on October 29, 2000. Price did not did not file his EEOC charge until May 1, 2001, 184 days after Yeager's promotion and more than 20 months after Nance's promotion. Thus, the district court did not err in concluding that Price failed to timely exhaust his administrative remedies as to these Title VII claims. See Wilkerson, 270 F.3d at 1317.

To the extent Price was relying, instead, on § 1981, a plaintiff is not required to exhaust his administrative remedies before filing a § 1981 action in federal court. See Caldwell v. Nat'l Brewing Co., 443 F.2d 1044, 1046 (5th Cir. 1971) (holding that a plaintiff alleging discriminatory employment practices with regard to race "has an independent remedy under § 1981 without respect to exhaustion under Title VII"). Nevertheless, Price's civil suit still had to be timely filed. Price did not file his civil suit until October 10, 2003, four years after Nance's promotion. Price's claim relating to Nance's promotion in August 1999, was untimely, regardless of whether the two-year or the four-year statute of limitations in 28 U.S.C. § 1658 was applicable. On the other hand, Price's claim in October

---

[6] During Baldwin's deposition, prior to which Price had not identified Nance as a "comparator," Baldwin initially guessed that Nance had been hired in 2000 or 2001. After Baldwin reviewed Nance's employment records, however, he determined that Nance was hired on August 23, 1999.

2003, challenging Yeager's promotion on October 29, 2000, was untimely only if the two-year limitations period was applicable.

Prior to 1990, in determining the proper statute of limitations, federal courts were to apply the most analogous state statute of limitations to § 1981 claims, which, in this case, was two years under Alabama law. See Goodman v. Lukens Steel Co., 482 U.S. 656, 660-61, 107 S.Ct. 2617, 2620-21, 96 L.Ed.2d 572 (1987), superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004); see also Moore v. Liberty Nat. Life Ins. Co., 267 F.3d 1209, 1219 (11th Cir. 2001) (applying Alabama's two-year statute of limitations for personal-injury torts to § 1981 claim). In 1990, Congress enacted § 1658(a), which created a default four-year limitations period for federal causes of action created after that date. See 28 U.S.C. § 1658. One year later, as part of the Civil Rights Act of 1991, Congress amended § 1981 to include a cause of action for discrimination in the terms and conditions of employment as well as discrimination in the making and enforcement of contracts. See 42 U.S.C. § 1981.

The Supreme Court subsequently determined in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836, 1945, 158 L.Ed.2d. 645 (2004), that Congress's 1990 enactment of § 1658 changed the limitations period to four years for some claims under § 1981. See id. at 377-80, 124 S.Ct. at 1842-44. The

16

Supreme Court also explained that, to the extent that the Civil Rights Act of 1991 created new causes of action not previously cognizable under § 1981, such claims are subject to the four-year "catch-all" statute of limitations of § 1658. See id. at 380-83, 124 S.Ct. at 1844-45.

We, therefore, must determine whether Price's § 1981 claim was cognizable before the effective date of the four-year "catch-all" statute of limitations under § 1658, and, thus, subject to the two-year limitation period. Under Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004), which applied to § 1981 before the amendments contained in the Civil Rights Act of 1991, a failure-to-promote claim was actionable under § 1981 if the promotion rose "to the level of an opportunity for a new and distinct relation between the employee and the employer." Id. at 185, 109 S.Ct. at 2377. Because Price was asserting that M & H Valve failed to promote him because of his race, we conclude that his § 1981 claims were cognizable under Patterson and, thus, time-barred under Alabama's two-year statute of limitations.

To the extent Price also is contending that these bars were inapplicable because he was alleging a "continuing violation," in determining whether a discriminatory employment practice constitutes a "continuing violation," we

17

"distinguish[] between the present consequence of a one time violation, which does not extend the limitations period, and the continuation of that violation into the present, which does."  See City of Hialeah, Fla. v. Rojas, 311 F.3d 1096, 1101 (11th Cir. 2002).  Moreover, the Supreme Court has explained that an employer's failure to promote is a discrete act or single occurrence.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 112 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002).  Thus, this doctrine of "continuing violation" was not applicable to Price's failure-to-promote claims.

Even if we were to conclude that Price's failure-to-promote claims were not barred by his failure to timely exhaust his administrative remedies under Title VII and his untimely filing of his § 1981 action, the district court did not err in granting M & H Valve summary judgment as to these claims as they related to Yeager.[7] See Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1251 n.17 (11th

---

[7]  Because Price did not identify Nance as a "comparator" prior to filing his response to M & H Vale's supplemental motion for summary judgment, the record does not contain evidence reflecting whether Price established a prima facie case in relation to Nance.  However, because M & H Valve objected to Price raising this claim for the first time in his brief opposing summary judgment, this claim was due to be dismissed, see Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (explaining that the liberal pleading standard under Fed.R.Civ.P. 8(a)(2) does not afford plaintiffs with an opportunity to raise new claims at summary judgment); see also Steger v. General Elec. Co., 318 F.3d 1066, 1077 & n.11 (11th Cir. 2003) (explaining that, although issues not raised in the pleadings may be treated as if they were properly raised when they either are "tried by express or implied consent of the parties," or "are included in a pretrial order," these exceptions are not applicable if an opposing party objects to the assertion of such a claim without the filing of a supplemental pleading).

18

Cir. 2001) (explaining that, "[w]hen reviewing a grant of summary judgment, the court of appeals may affirm if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied").[8] We review de novo the grant of a motion for summary judgment. Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1230 (11th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©). To survive a motion for summary judgment, the nonmoving party must demonstrate that there is " a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where direct evidence of discrimination is

---

[8] Because § 1981 and Title VII share the same requirements of proof and use the same analytical framework, we apply cases from both bodies of law interchangeably and conclude that Price failed to satisfy his burden of proof under both provisions. See Shields v. Fort James Corp., 305 F.3d 1280, 1282-83 (11th Cir. 2002) (applying this parallel treatment and concluding that, under both Title VII and § 1981, claims of hostile work environment have to be reviewed in their entirely, so long as at least one event comprising it fell within the limitations period).

19

unavailable—as was the case here—a plaintiff, nevertheless, may present circumstantial evidence of discrimination sufficient to create a jury question. Silvera v. Orange County School Bd., 244 F.3d 1253, 1258 (11th Cir. 2001). For claims based on circumstantial evidence, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Id. If the plaintiff is successful, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." Id. The plaintiff then may attempt to demonstrate that the proffered reason was, in fact, merely pretext for the defendant's acts. Id.[9] "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id.

"A plaintiff establishes a prima facie case of discriminatory failure to promote by showing that (1) he is a member of a protected class; (2) he was qualified and applied for the promotion, (3) he was rejected despite his qualifications, and (4) other equally or less qualified employees who were not members of the protected class were promoted. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004). Under the second prong—the only one at issue here—a Title VII plaintiff need only show that he satisfied the employer's

---

[9] The Supreme Court set out this three-part burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

20

objective qualifications. <u>Vessels v. Atlanta Independent School System</u>, 408 F.3d 763, 769 (11th Cir. 2005). Moreover, where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, such as in the instant case, a plaintiff "need not show under the second prong that he applied for the position—only that the employer had some reason to consider him for the post." <u>Id.</u> at 768. Here, M & H Valve did not show that it had objective criteria that is used in making promotions, at least during the relevant time period during which Price believed discriminatory promotions occurred. Moreover, Baldwin confirmed that, although he did not know if Price ever had been considered for a supervisory position, Baldwin knew that Price had displayed interest in such positions.

However, assuming for purposes of argument that Price established a <u>prima facie</u> claim of failure to promote, he failed to show that M & H Valve's proffered non-discriminatory reasons for not promoting him were pretextual. In determining pretext, we evaluate whether the plaintiff demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted). "If the plaintiff does not proffer sufficient

21

evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, the [defendant] is entitled to summary judgment." Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc) (discussing pretext in context of age and disability discrimination).

Because an employer may use legitimate, non-discriminatory subjective factors in its decision-making, we "ha[ve] refused to adopt a lower standard when employers use subjective criteria." Wilson, 376 F.3d at 1088. A plaintiff also cannot prove pretext merely by asserting that he was better qualified than the person who received the position at issue. Id. at 1090. We "must not judge which employee was more qualified, but determine whether any disparity is so great that a reasonable fact-finder could infer that [the employer] did not believe" that the comparator was better qualified. Id. (quotations and marks omitted).[10] Moreover, "a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason," as long as "the reason is one that might motivate a reasonable employer." Pennington v. City

_____

[10] We note that, to the extent we have explained in the past that the plaintiff must adduce evidence that the disparity in qualifications was "so apparent as virtually to jump off the page and slap you in the face," see Wilson, 376 F.3d at 1090, the Supreme Court recently has clarified, without offering an alternative standard of review, that an employer's stated reasons for an allegedly discriminatory hiring decision need not "jump off the page and slap you in the face" to be considered pretextual, see Ash v. Tyson Foods, Inc., ___ U.S. ___, 126 S.Ct. 1195, 1197-98, ___ L.Ed.2d ___ (Feb. 21, 2006). The Court also discussed that "qualifications evidence may suffice, at least in some circumstances, to show pretext." See Ash, U.S. at ___, 126 S.Ct. at 1197.

22

of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001); see also Rowell v. BellSouth Corp., 433 F.3d 794, 798-99 (11th Cir. 2005) (explaining that "[i]t is by now axiomatic that we cannot second-guess the business decisions of an employer," and that the employer's use of competency factors did not demonstrate intent to discriminate based on age).

Applying this analysis to the instant facts, although "qualifications evidence may suffice, at least in some circumstances, to show pretext," see Ash, ___ U.S. at ___, 126 S.Ct. at 1197, evidence reflecting that Price was substantially less qualified than Yeager for the CNC Supervisor position included Fulmer's deposition testimony that Yeager ultimately was hired based on his extensive knowledge of CNC machines, his ten years' experience operating and setting up these machines, and his four years' supervisory experience. Price, on the other hand, conceded during his deposition that he had no supervisory experience.

Price also did not show that he ever operated, much less set up, a CNC machine prior to Yeager's promotion. Moreover, to the extent that Price is contending that he trained many M & H Valve employees, and he "knew the plant as well as anyone, as he had been one of their longer term employees," he failed to show that M & H Valve's reason behind its promotion of Yeager was not a reason "that might motivate a reasonable employer." See Pennington, 261 F.3d at 1267.

23

Thus, even if Price's claim of failure to promote as it related to Yeager was not time-barred, and even assuming Price established a prima facie case, he failed to show that genuine issues of material fact existed as to whether M & H Valve's non-discriminatory reasons for not promoting him were pretextual and that summary judgment was not warranted.[11]

**Issue 2:      Price's claim of disparate impact in training**

Price also argues on appeal that he proffered substantial evidence of disparate impact based on M & H Valve's failure to train African-American employees. Price contends that, although training is "necessary for advancement" at M & H Valve, he has not been offered any training. He also asserts that M & H Valve's current supervisory-training program has a discriminatory impact because (1) none of the current supervisors had to meet the program's educational requirements, (2) the program does not include any African-American employees, and (3) M & H Valve failed to conduct a study as to whether the program is reasonably related to the requirements of supervisory positions at M & H Valve.

As discussed above, a plaintiff pursuing a Title VII discrimination claim first must exhaust his administrative remedies, including filing a timely charge of

---

[11] To the extent Price is arguing for the first time on appeal that "racial slurs" that he previously alleged constituted retaliation was direct evidence of discriminatory intent, we also will not address this newly raised claim on appeal. See Access Now, 385 F.3d at 1331.

24

discrimination with the EEOC.  See Wilkerson, 270 F.3d at 1317; 42 U.S.C.

§ 2000e-5(b).  Additionally, although we must liberally construe EEOC charges

that are prepared without the assistance of counsel, a plaintiff is precluded from

raising allegations in a civil action unless they are reasonably related to the

underlying charges raised before the EEOC.  See Gregory v. Georgia Dept. of

Human Resources, 355 F.3d 1277, 1280 (11th Cir. 2004) (explaining that "a

plaintiff's judicial complaint is limited by the scope of the EEOC investigation

which can reasonably be expected to grow out of the charge of discrimination").[12]

Although judicial claims that "amplify, clarify, or more clearly focus" the

allegations in the EEOC charge are permitted, a plaintiff may not allege in his

complaint new acts of discrimination.  See id. at 1179-80.

In the instant case, Price's EEOC charge included that M & H Valve

(1) denied him the opportunity to apply for a supervisory position because of his

race by failing to advertise vacant supervisory positions and by promoting

Caucasian employees, instead of more qualified African-American employees; and

(2) subjected him and other African-American employees to harassment through

---

[12]  The purpose of this requirement is that the EEOC "should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts."  See Gregory, 355 F.3d at 1279. Additionally, the charge requirement serves to notify the employer of the allegations made against it.  See Wilkerson, 270 F.3d at 1319.

25

racial slurs, jokes, and differences in treatment. Price's claim that M & H Valve's supervisory-training program had a disparate impact on its African-American employees did not "amplify" or "clarify" the previous allegations, nor did it "grow out of the previous claims." Moreover, the record does not reflect that Price attempted to amend or update his EEOC charge. See Gregory, 355 F.3d at 1280. Thus, we conclude that Price also failed to exhaust his administrative remedies as to his claim of disparate impact.

Even if we were to conclude that Price exhausted his administrative remedies, the district court did not err in granting M & H Valve summary judgment as to this claim. The theory of disparate impact "prohibits neutral employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group." EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1274 (11th Cir. 2000). To establish a prima facie case of disparate-impact discrimination, a plaintiff must demonstrate (1) a specific, facially-neutral employment practice, (2) a significant statistical disparity in the racial composition of employees benefitting from the practice and those qualified to benefit from the practice; and (3) a causal nexus between the practice identified and the statistical disparity. Cooper v. Southern Co., 390 F.3d 695, 716 (11th Cir. 2004), cert. denied, 126 S.Ct. 478 (2005). Assuming that Price identified a

26

"specific, facially-neutral employment practice," he failed to demonstrate a statistical disparity in the racial composition of employees benefitting from the practice and those qualified to benefit from the practice. See Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 996-97, 108 S.Ct. 2777, 2790, 101 L.Ed.2d 827 (1988) (holding that "statistics based on an applicant pool containing individuals lacking minimal qualifications for the job would be of little probative value"). Thus, Price could not establish a prima facie case of disparate impact in training.

Finally, to the extent Price was relying on § 1981, we have explained that, because § 1981 liability must be founded on purposeful discrimination, a showing of disparate impact through a neutral practice alone is insufficient to prove a § 1981 violation. See Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999). Thus, only direct or inferential modes of proving intentional discrimination are available to the § 1981 plaintiff, and the district court also did not err in concluding that summary judgment was warranted as to Price's claim of disparate impact under § 1981.

Accordingly, we conclude that the district court did not err in granting summary judgment as to Price's Title VII claims of discriminatory failure to promote and disparate impact in training. We, therefore, affirm.

**AFFIRMED.**

27