[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 22, 2001
THOMAS K. KAHN
CLERK

————————————————

No. 00-13915

————————————————

D. C. Docket No. 99-00133-CV-BAE-6

CAROL WILKERSON,

Plaintiff-Appellant,

versus

GRINNELL CORPORATION,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Georgia

————————————————

**(October 22, 2001)**

Before BIRCH, COX and ALARCON[*], Circuit Judges.

COX, Circuit Judge:

---

[*] Honorable Arthur L. Alarcon, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Carol Wilkerson sued Grinnell Corporation, asserting, inter alia, claims under Title VII. The district court granted summary judgment on her Title VII claims because she failed to file a timely charge of discrimination and harassment with the EEOC. Since we conclude that Wilkerson filed a timely EEOC charge, we vacate the district court's grant of summary judgment on the Title VII claims and remand the case.

## I. BACKGROUND

The essential facts relevant to this appeal are undisputed. Wilkerson is a black female who began working for Grinnell in July 1995. (R.-17 at 1.) On August 19, 1997, Grinnell terminated her employment. Wilkerson immediately contacted the EEOC and explained her situation. (R.-18 at 132-33.) The EEOC sent her an "Employment Discrimination Complaint Questionnaire," and she answered and returned it. (R.-18 at 133.) The EEOC received this intake questionnaire on August 23, 1997. (R.-18-Ex.10 at 1.)

In her responses to the intake questions, Wilkerson alleged race and sex discrimination by Grinnell. (R.-18-Ex. 10 at 1-2.) She included her full name, address, and telephone number, as well as the name and address of Grinnell. (R.-18-Ex. 10 at 1). She listed the names of two employees involved in the alleged discrimination. (R.-18-Ex. 10 at 1.) Wilkerson attached to the questionnaire a seven-

2

page narrative detailing specific instances of discrimination and harassment and naming the particular individuals involved in each instance. (R.-18-Ex. 10 at 5-12.) She also named nine individuals who had direct knowledge of these alleged acts. (R.-18-Ex. 10 at 4 & 13.) On the third page of the form, Wilkerson signed her name under the following italicized statement: "I swear or affirm under penalty of perjury that the provided information is truthful and correct to the best of my knowledge." (R.-18-Ex. 10 at 4.)

By September, the EEOC had not contacted Wilkerson, so she called the EEOC. (R.-18 at 139.) Wilkerson's EEOC contact said that there were a lot of people ahead of Wilkerson and that the EEOC takes people as they come. (R.-18 at 139.) Wilkerson confirmed that her EEOC contact knew the date of her discharge, and she awaited her turn. (R.-18 at 139.)

In June 1998, Wilkerson called the EEOC again and spoke with Marvin Frazier. (R.-18 at 139.) Frazier told her that the EEOC had mailed further questions to her in October 1997. (R.-18 at 139.) Wilkerson responded that she had not received the questions. (R.-18 at 139.) At the end of the conversation, Frazier told Wilkerson that the EEOC would proceed on the basis of her questionnaire. (R.-18 at 139.) The EEOC then issued a Notice of Charge of Discrimination to Grinnell on June 24, 1998. (R.-18-Ex. 18.) This Notice informed Denny Young, the Human Resource Manager

3

at Grinnell, of Wilkerson's allegations that "she was discharged from her employment, disciplined and intimidated in her employment because of her race, Black and sex, female." (R.-18-Ex.18.)

After further review of Wilkerson's file, the EEOC dismissed Wilkerson's charge as untimely and issued a notice of right to sue in April 1999. (R.-18-Ex. 19.) Wilkerson, on the advice of an attorney, visited the EEOC in person. (R.-18 at 140.) She spoke with Lynn Jordan, who again reviewed Wilkerson's file and determined that her intake questionnaire constituted a timely charge. (R.-18 at 145.) On July 2, 1999, Jordan revoked the prior notice of right to sue, which had found the charge untimely. (R.-18-Ex. 20.) Wilkerson then requested a right to sue letter (R.-18 at 145-46), and the letter was issued on July 8, 1999. (R.-18-Ex. 21.) Wilkerson filed her complaint, pro se, on August 11. (R.-1.)

## II. PROCEDURAL HISTORY

The district court adopted the magistrate judge's report and recommendation, which concluded that Grinnell was due summary judgment because Wilkerson's intake questionnaire was unverified and, accordingly, could not constitute a charge under 42 U.S.C. § 2000e-5(b). (R.-24 at 6.)

4

## III. ISSUES ON APPEAL

Wilkerson contends that the district court committed reversible error by determining that her intake questionnaire was unverified. Grinnell does not dispute that Wilkerson's charge was in fact verified. Instead, Grinnell urges us to affirm the district court on an alternative ground, namely that Wilkerson's intake questionnaire, even if verified, did not constitute a timely charge under Title VII. We will consider, then, whether Wilkerson's intake questionnaire constituted a timely charge in the circumstances of this case.

## IV. STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo, applying the same familiar standards as the district court. *See Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998).

## V. DISCUSSION

Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies. *See Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999). The first step down this path is filing a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(b) (1994); *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000). For a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last

discriminatory act.  *See* 42 U.S.C. § 2000e-5(e)(1) (1994); *Howlett v. Holiday Inn, Inc.*, 49 F.3d 189, 197 (6th Cir. 1995).

Besides being timely, charges of discrimination "shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires."  42 U.S.C. § 2000e-5(b) (1994); *Pijnenburg v. West Ga. Health Sys., Inc.*, 255 F.3d 1304, 1307 (11th Cir. 2001); *Vason v. City of Montgomery*, 240 F.3d 905, 907 (11th Cir. 2001).  EEOC regulations state that a charge "shall be in writing and signed and shall be verified."  29 C.F.R. § 1601.9 (2000).  To be verified, a charge must be "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury."  29 C.F.R. § 1601.3(a) (2000).

At the end of her intake questionnaire, Wilkerson signed the following statement: "I swear or affirm under penalty of perjury that the provided information is truthful and correct to the best of my knowledge."  (R.-18-Ex. 10 at 4.)  This declaration plainly satisfies the verification requirements of Title VII and EEOC regulations.  The district court's determination to the contrary is in error.

However, Grinnell asserts that we may affirm the district court on alternative grounds.  Indeed, when the district court's *reasoning* is in error, we may still consider

6

whether the district court's *judgment* is correct. *See Solitron Devices, Inc. v. Honeywell, Inc.*, 842 F.2d 274, 278 (11th Cir. 1988). Grinnell maintains that Wilkerson filed an intake questionnaire instead of a charge. Since the EEOC draws a sharp distinction between an intake questionnaire and a charge, says Grinnell, an intake questionnaire does not activate the administrative process, preventing EEOC reconciliation and investigation. Grinnell further contends that an intake questionnaire does not trigger notice to the employer and, thus, results in prejudice to the employer. Therefore, according to Grinnell, Wilkerson's charge should be deemed untimely. Wilkerson, on the other hand, asks us to adopt a functional approach to the charge filing requirement by finding that her intake questionnaire constituted a charge for purposes of the statute of limitations.

To resolve this dispute, we must begin, of course, with Title VII itself. Title VII mandates only that a charge be verified and in writing. *See* 42 U.S.C. § 2000e-5(b) (1994). In addition to these statutory requirements, Title VII grants the EEOC broad discretion to determine in what form a charge must come and what information it must contain. *See* 42 U.S.C. § 2000e-5(b) (1994); *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1240 (11th Cir. 1989).

EEOC regulations do distinguish between charges and intake questionnaires, but the distinction is not as sharp as Grinnell contends. Section 1601.6 states only that

the EEOC "shall receive information concerning alleged violations." 29 C.F.R. §

1601.6(a) (2000). "Where the information discloses that a person is entitled to file a

charge," the EEOC may assist in the filing of the charge. *Id.* In practice, the EEOC

uses intake questionnaires to receive information. But the regulations do not speak

of intake questionnaires and do not state that intake questionnaires may never

constitute charges.

EEOC regulations do establish charge requirements, however. According to the

regulations, charges "should contain" certain information. 29 C.F.R. § 1601.12(a)

(2000).[1] However, even if a charge does not contain the suggested information, the

EEOC will deem a charge minimally sufficient when it receives from the charging

party "a written statement sufficiently precise to identify the parties, and to describe

---

[1] EEOC regulations suggest that the following information should be included in a charge:
1. The full name, address and telephone number of the person making the charge . . .;
2. The full name and address of the person against whom the charge is made, if known . . .;
3. A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices . . .;
4. If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and
5. A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

29 C.F.R. § 1601.12(a) (2000).

generally the action or practices complained of." 29 C.F.R. § 1601.12(b) (2000). Furthermore, a charge may be amended to cure technical defects, to clarify or amplify allegations, or to allege additional unlawful acts. *See id.* The requirements for a charge are, indeed, "very minimal." *EEOC v. Mississippi Coll.*, 626 F.2d 477, 483 (5th Cir. 1980).

Once a sufficient charge is filed, Title VII provides that notice of the charge "shall be served" within ten days on the person against whom the charge is made. 42 U.S.C. § 2000e-5(e)(1) (1994). The EEOC assumes the burden of service in its regulations. *See* 29 C.F.R. § 1601.14(a) (2000). But because EEOC regulations and practices do not adequately distinguish between intake questionnaires and charges, the EEOC often has difficulty discharging this burden.

Such is the case here. The information that Wilkerson provided in her intake questionnaire was more than "minimally sufficient." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998). She provided all the information requested by the regulations except for the approximate number of Grinnell employees, information that the charging party must include only "if known." This defect, if truly a defect, was certainly amendable. Wilkerson's intake questionnaire, then, satisfied the more stringent charge requirements of 29 C.F.R. § 1601.12(a).

In *Pijnenburg*, we held that "an intake questionnaire does not constitute a valid

9

charge under Title VII for purposes of the statute of limitations." *Pijnenburg*, 255 F.3d at 1306. But we expressly limited that holding to cases where the questionnaire does not contain the requested information or otherwise meet the requirements for a validly filed charge. *See id.* at 1307. In this case, we have a questionnaire that is verified and contains the information suggested by 29 C.F.R. § 1601.12(a). Now we must determine whether Wilkerson's intake questionnaire may constitute a valid charge under the circumstances of this case.

We are not the first court to confront an issue of this kind. The United States Courts of Appeals for the Third, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits have all considered whether an intake questionnaire that meets the requirements of a charge can serve as a charge. Among these circuits, there is a variety of approaches. *See Waiters v. Robert Bosch Corp.*, 683 F.2d 89 (4th Cir. 1982) (holding that an affidavit including all of the suggested information except the employer's address constituted a charge despite the EEOC's failure to notify the employer); *Price v. Southwestern Bell Tel. Co.*, 687 F.2d 74 (5th Cir. 1982) (holding that an unverified, minimally sufficient interview form constituted a charge because it set the EEOC's administrative machinery in motion); *Casavantes v. California State Univ.*, 732 F.2d 1441 (9th Cir. 1984) (holding that an unverified, minimally sufficient intake questionnaire constituted a charge).

10

The Third, Seventh, and Eighth Circuits have coalesced around a single approach to determining whether a complaint to the EEOC may serve as a charge. The Third Circuit initiated this approach in a case involving the Age Discrimination in Employment Act: "In order to constitute a charge that satisfies the requirement of section 626(d), notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983). Once the EEOC receives such notice, it may fulfill its statutory duty to investigate the claim and to inform the employer of the charge. *See id.*; *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 542 (7th Cir. 1988). The Seventh Circuit adopted the *Bihler* approach to the ADEA in *Steffen* and later extended it to the Title VII context. *See Philbin v. General Elec. Capital Auto Lease, Inc.*, 929 F.3d 321, 324-25 (7th Cir. 1991). The Eighth Circuit also adopted the *Bihler* approach in both contexts. *See Diez v. Minnesota Mining & Mfg. Co.*, 88 F.3d 672, 676 (8th Cir. 1996) (ADEA context); *Whitmore v. O'Connor Mgmt., Inc.*, 156 F.3d 796, 799 (8th Cir. 1998) (Title VII context).

The manifest-intent approach of the Third, Seventh, and Eighth Circuits comports with our precedent. In *Pijnenburg*, we noted that a charge served two significant functions: notice to the employer and initiation of an EEOC investigation. *See Pijnenburg*, 255 F.3d at 1306. A charge also gives the EEOC an opportunity to

11

remedy unlawful employment practices through informal methods of conciliation. *See Clark*, 865 F.3d at 1241. The manifest-intent approach requires a charging party to indicate clearly that she wishes to activate these functions. Furthermore, as we pointed out in *Sims v. MacMillan*, 22 F.3d 1059 (11th Cir. 1994), we are reluctant to condition an action for discrimination on the EEOC's performance of its duties. *See id.* at 1063. The manifest-intent approach ensures that, once a charging party's intent is made clear, the EEOC's inaction will not vitiate her claim. Finally, under this approach, we will not treat intake questionnaires willy-nilly as charges, a concern expressed in *Pijnenburg*, 255 F.3d at 1306, and noted by other circuits, *see Park v. Howard Univ.*, 71 F.3d 904, 909 (D.C. Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 80 (7th Cir. 1992).

To determine whether the intake questionnaire in this case can function as a charge, we must ask the following question: Would the circumstances of this case convince a reasonable person that Wilkerson manifested her intent to activate the machinery of Title VII by lodging her intake questionnaire with the EEOC? *See Diez*, 88 F.3d at 676. Some facts relevant to our inquiry include what Wilkerson and EEOC personnel said to each other, what the questionnaire form itself indicated, and how the EEOC responded to the completed questionnaire. *See id.* This list of relevant facts is, of course, not exhaustive.

12

The circumstances of this case would convince a reasonable person that Wilkerson manifested her intent to activate the administrative machinery. When Wilkerson first contacted the EEOC, she explained her situation to an EEOC employee. The employee then mailed the questionnaire to Wilkerson, and Wilkerson returned it almost immediately. A few weeks later, Wilkerson contacted the EEOC, and the same employee told Wilkerson that she would have to wait her turn because there were people in front of her. The EEOC employee was aware of Wilkerson's discharge date, so Wilkerson could have easily assumed that the EEOC would protect her interests.

Additionally, the questionnaire form itself indicated that it could be a charge. On the first page of the questionnaire, the fifth instruction reads as follows: "A charge of employment discrimination must be filed with the EEOC within 180 days of the date of the alleged discriminatory action taken against you." (R.-18-Ex. 10 at 1.) Even a careful reader could interpret this charge deadline to refer to the filing of the questionnaire.

The first page also includes a space for the filing party's social security number that is labeled "SOCIAL SECURITY NO:*." (R.-18-Ex. 10 at 1.) The asterisk leads to the Privacy Act Statement on the third page. (R.-18-Ex. 10 at 4.) This statement says that the "EEOC will use your social security number to distinguish you and your

13

charge information from anyone else who might have a similar or identical name." (R.-18-Ex. 10 at 4.) It also states that "[f]urnishing your social security number is voluntary. Your charge will be processed whether or not you furnish the information." (R.-18-Ex. 10 at 4.) In other words, if the filing party provides her social security number in the available space, the EEOC will use it for identification purposes; if not, the EEOC will process the charge anyway. This series of statements indicates that the questionnaire is either a charge or initiates the charging process.

The last page of the document also indicates that the questionnaire is a charge. This page is labeled "EEOC/Savannah Local Office" followed by "Charge Receipt/Technical Information." (R.-18-Ex. 10 at 4.) This document label implies that the questionnaire is a charge. The last page also includes a place for the filing party to verify the document under penalty of perjury. Such verification indicates to the filing party that the information must be accurate because it is legally significant. When all of these indications are taken together, a filing party could easily construe the questionnaire as a charge. Moreover, the questionnaire itself does not say that it is merely a questionnaire and not a charge.

Grinnell argues, though, that a letter attached to the questionnaire notifies the filing party that the intake questionnaire is not a charge.[2] This attached letter is

---

[2] A copy of this letter is attached to this opinion as Appendix A.

14

entitled "YOU MAY FILE A CHARGE." (R.-18-Ex. 10 at 3.) It describes how the EEOC investigates allegations of discrimination. (R.-18-Ex. 10 at 3.) It concludes by stating that, even if the EEOC does not wish to pursue the allegations, "YOU MAY STILL FILE A CHARGE WITH US." (R.-18-Ex. 10 at 3.) While Wilkerson signed that she read and understood this letter (R.-18-Ex. 10 at 3.), it is unclear precisely what she could have understood by reading it. The letter never says that the questionnaire is not a charge, and it might easily be read to the contrary.

On the other hand, the EEOC's responses to Wilkerson's completed questionnaire were inconsistent. The EEOC first failed to respond at all. Eventually, after some prodding by Wilkerson, the EEOC decided to treat the questionnaire as a charge and issued belated notice of the charge to Grinnell. In any event, while the EEOC's treatment of the questionnaire is relevant, it is not necessarily conclusive. *See Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1139 (7th Cir. 1994); *Steffen*, 859 F.2d at 544; *Stearns v. Consolidated Mgmt., Inc.*, 747 F.2d 1105, 1112 (7th Cir. 1984); *Bihler*, 710 F.2d at 99 n.7; *cf. Forehand v. Florida State Hosp.*, 89 F.3d 1562, 1570-71 (11th Cir. 1996) ("[A]ny deficiency in the EEOC's performance of its duties should not adversely affect a plaintiff's right to sue."); *White v. Dallas Indep. Sch. Dist.*, 581 F.2d 556, 562 (5th Cir. 1978) (en banc) ("We think that the EEOC's failure to follow its own regulations sufficiently misled Mrs. White and that their mistakes

15

should not redound to her detriment.").[3] Furthermore, the EEOC's ultimate response, combined with the other relevant facts, would convince a reasonable person that Wilkerson manifested her intent to activate the administrative machinery, and we conclude that she did so.

In sum, we hold that a verified intake questionnaire that includes the basic information suggested by 29 C.F.R. § 1601.12(a) may constitute a charge for purposes of the Title VII statute of limitations when the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC. The circumstances of this case, including Wilkerson's conversations with the EEOC, the misleading indications of the intake questionnaire form, and the EEOC's ultimate response, show that Wilkerson manifested such an intent by submitting her verified intake questionnaire to the EEOC. Accordingly, Wilkerson's intake questionnaire satisfied the charge requirement of Title VII's statute of limitations.

Wilkerson filed her charge by August 23, 1997, three days after the last allegedly discriminatory incident and well within the 180 day period prescribed by

---

[3]     We note that these cases arise in both the Title VII context and the ADEA context. Since the charge requirements are similar under both statutes, we generally look to both types of cases to resolve charge issues. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 n.10 (11th Cir. 2001). Nevertheless, the charge requirements do differ in some respects, particularly regarding the verification and writing requirements. Where the statutes differ, of course, we must treat them differently.

Title VII. Since the EEOC was unable to secure adequate relief for Wilkerson's grievance within the statutory period, Wilkerson's right to sue letter was valid, and the district court improperly granted summary judgment on this ground.

## VI. CONCLUSION

Wilkerson filed a timely charge of discrimination with the EEOC, and the district court's contrary determination was in error. We decline to consider whether summary judgment is otherwise appropriate on Wilkerson's Title VII claim.[4] Therefore, we vacate summary judgment and remand the case so the district court may consider in the first instance whether summary judgment is otherwise appropriate.

Wilkerson also included in her complaint a claim of intentional race discrimination under 42 U.S.C. § 1981. She contends that summary judgment was improperly granted on this claim. However, since Wilkerson did not raise this issue until her supplemental reply brief, we deem it abandoned, and the district court's grant of summary judgment on this claim is consequently affirmed. *See McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1496 (11th Cir. 1990) (en banc).

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

---

[4]   Grinnell advances other alternative grounds for affirmance, including judicial estoppel, failure to establish a prima facie case, failure to show pretext, and failure to raise certain claims. We do not reach these issues today, preferring that the district court address them in the first instance. *See Bufman Org. v. FDIC*, 82 F.3d 1020, 1028 (11th Cir. 1996).

17