[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-16126
Non-Argument Calendar

_____

D. C. Docket No. 1:10-cv-24217-MGC


JOHN ROBERT JOHNSON,
DIANA CANTU, as his wife,

Plaintiffs-Appellants,


versus


UNIQUE VACATIONS, INC.,
a Florida corporation,
SANDALS RESORTS INTERNATIONAL, LTD.,
a foreign corporation, d.b.a. Sandals Grande
St. Lucian Spa and Beach Resort, et al.,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 20, 2012)

Before TJOFLAT, KRAVITCH and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants, John Robert Johnson and his wife, Diana Cantu, appeal the grant of summary judgment in favor of defendants on a claim of negligence that resulted in personal injury to Johnson while he was on a horseback-riding excursion with Cantu at a resort in St. Lucia.[1]  No reversible error has been shown; we affirm.

Plaintiffs, residents of Illinois, traveled to St. Lucia in November 2007 for a prepaid vacation at Sandals Grande St. Lucian Spa and Beach Resort ("Sandals Grande").  They used Unique Vacations, Inc. ("Unique") to make their vacation accommodations and travel arrangements for their all-inclusive stay at Sandals Grande.  On 26 November 2007, plaintiffs booked and paid for a horseback-riding excursion through the Sandals Grande tour desk.  The excursion was operated by International Pony Club, who is not a party to the instant action.  After purchasing the excursion tickets, Cantu signed an excursion ticket sales receipt which included these words:

---

[1] We review de novo the district court's grant of summary judgment.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).  And we view the evidence in the light most favorable to the non-moving party.  Id.

2

There exists no relationship of master and servant or of agency between the Operators of Tours and the Tour Desk of Sandals Grande St. Lucian.  The Operators of tours sold at the Tour Desk of Sandals Grande St. Lucian are solely responsible for their acts and omissions and Sandals Grande St. Lucian assumes no responsibility for such acts and omissions or for any injury, loss, damage, sickness, or accident sustained on any of the tours offered for sale at the Tour Desk.

On 27 November 2007, plaintiffs, along with other Sandals Grande resort guests, were transported from the resort to an off-site location on a bus operated by Sandals Resorts International, Ltd. ("Sandals").  Upon arrival, plaintiffs signed a waiver on a sign-in sheet for the excursion, which stated in part:

> While we take every reasonable step to ensure your enjoyment and safety, one must recognize the existence of an inherent risk associated with horseback riding and being close to horses.  Consequently, each rider will be required to sign this waiver.  By doing so, the customer gives up the right to sue International Pony Club and their employees, representatives, officers and agents, for any injuries sustained by the customer and his personal belongings, including other activities engaged on the beach, like swimming, swimming with the horses, exploring, snorkeling, etc.

Johnson alleged that, after he mounted his horse, a tour guide smacked the horse causing the horse to start running unexpectedly.  He was thrown from the horse and suffered serious injuries.  Plaintiffs later filed a complaint against Unique, Sandals Grande, and Sandals, alleging that defendants were vicariously liable for Johnson's injuries due to their relationship with International Pony Club.

3

Cantu also brought an action for loss of consortium.  Defendants, in turn, moved to dismiss the complaint based on forum non conveniens, on contractual waiver, and for failure to establish an agency relationship between International Pony Club and defendants.

On appeal, plaintiffs first argue that the district court erred by converting defendants' motion to dismiss into a motion for summary judgment -- and then granting the motion -- because issues of fact existed about whether an agency relationship could be found between defendants and International Pony Club. When a court considers matters outside of the pleadings in a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the court converts that motion into a motion for summary judgment.  See Fed.R.Civ.P. 12(d)[2]; Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002).  And when conversion occurs, the adverse party must be "given express, ten-day notice of the summary judgment rules, of his right to file affidavits or other material in opposition to the motion, and of the consequences of default." Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

---

[2] If, on a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Fed.R.Civ.P.] 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).  Here, the district court considered exhibits, including copies of the receipt and waiver, that defendants attached to their motion to dismiss.

The record shows that the district court fully explained to plaintiffs the consequences and procedure of conversion -- they were given the requisite ten-day notice and advised to submit additional evidence in support of, or in opposition to, the motion.  Plaintiffs availed themselves of this right and filed an opposition to the motion for summary judgment, including supporting exhibits.  As a result, the district court did not err in converting defendants' motion to dismiss to a motion for summary judgment.

Next, plaintiffs contend that the district court erred in granting summary judgment because the court placed the burden on them -- as the nonmoving party -- to establish the existence of an agency relationship between defendants and International Pony Club.[3]

Summary judgment is appropriate where the moving parties demonstrate, through pleadings, interrogatories, and admissions, together with affidavits, if any, that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a), (c).  Once a party properly supports a motion for summary judgment by demonstrating the absence of a genuine issue of

---

[3] In general, the existence of an agency relationship is one for the jury to decide as the triers of fact.  Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 853 (Fla. 2003).  "The question can be resolved by summary judgment only in those cases where the evidence is capable of but one determination and there is no evidentiary question for the jury to resolve."  Font v. Stanley Steemer Intern., Inc., 849 So.2d 1214, 1216 (Fla. Dist. Ct. App. 2003).

material fact, the nonmoving party must come forward with specific facts showing a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (citation omitted).

The record supports the district court's conclusion that plaintiffs failed to show sufficient evidence that International Pony Club was an agent of defendants. Plaintiffs failed to rebut the evidence showing that defendants did not in any way own, operate, or exercise the right to control International Pony Club. See Whetstone Candy Co. v. Kraft Foods, Inc., 351 F.3d 1067, 1077 (11th Cir. 2003) (holding there was "no agency relationship" between two companies absent a lack of acknowledgment that one acted on behalf of another). The receipt for the excursion -- that plaintiffs acknowledge Cantu signed when she paid for the horseback excursion -- clearly noted that International Pony Club was "solely responsible for their acts and omissions" and that Sandals Grande "assume[d] no responsibility for such acts and omissions," or injuries sustained on the tours offered for sale at the tour desk. See Restatement (Second) of Agency § 14 cmt. b (1957) ("If the existence of an agency relation is not otherwise clearly shown, as

6

where the issue is whether . . . an agency has been created, the fact that it is understood that the person acting is not to be subject to the control of the other as to the manner of performance determines that the relation is not that of agency."); see also Commodity Futures Trading Comm'n, 575 F.3d at 1190 (relevant to control in an agency relationship is authority to supervise and discipline the agent).

Defendants repeatedly represented to their customers that defendants had no agency relationship with the operators of the horseback-riding excursion. A display posted on the tour operator desk clearly noted that International Pony Club was no agent of defendants. Plaintiffs cite to several contractual provisions in an agreement between Jairo Management Limited ("Jairo"), Sandals Grande's management company, and International Pony Club to argue that Jairo retained the authority to control International Pony Club's horseback-riding excursions. To the contrary, the record evidences that International Pony Club operated as an independent contractor. See Vermeulen v. Worldwide Holidays, Inc., 922 So.2d 271, 274 (Fla. Dist. Ct. App. 2006) ("The standard for determining whether an alleged agent is an independent contractor is the degree of control exercised by the employer or owner of the alleged agent.") (quotation and alteration omitted).

7

The contract provisions listed by plaintiffs do not relate to control; none of the requirements dictated how International Pony Club was required to operate its horseback-riding excursion tours. The contract specifically stated that International Pony Club was wholly responsible for the maintenance of "all the animals, equipment and/or vehicles used in the provision of the Services." International Pony Club also was responsible for hiring and supervising its own employees, as well as procuring its own licenses, insurance, and permits. Nothing indicates that defendants instructed International Pony Club, in substance, on how to run its business. See Harper ex rel. Daley v. Toler, 884 So.2d 1124, 1131 (Fla. Dist. Ct. App. 2004) (noting that, an agency relationship exists where the principal controls the means by which the agency conducts its business, but where the principal controls only the results to be obtained from the business, the relationship is one of an independent contractor).

Despite plaintiffs' claims of an agency relationship between International Pony Club and defendants, the mere allegation of agency is insufficient to create a principal/agent relationship. See Vermeulen, 922 So.2d at 274-75 (affirming the grant of summary judgment where the plaintiff failed to present evidence showing that defendants owned, operated, or controlled the negligent party). Here, plaintiffs have presented no evidence indicating that defendants owned, operated,

8

or controlled International Pony Club.  As such, plaintiffs' speculations are insufficient to create an issue of fact about agency; and the district court properly granted summary judgment to defendants.[4]

AFFIRMED.

---

[4] Because Johnson does not have an actionable tort against defendants, the district court properly concluded that Cantu's loss of consortium claim fails as a matter of law.  See Gates v. Foley, 247 So.2d 40, 45 (Fla. 1971) (under Florida law, a loss of consortium claim is a derivative claim and is dependent upon the existence of an actionable tort causing harm to the plaintiff's spouse).