Cynthia F. CHESNUT, Plaintiff,

v.

ETHAN ALLEN RETAIL, INC., Defendant.

Civil Action No. 3:13–cv–112–TCB.

United States District Court,
N.D. Georgia,
Newnan Division.

Sept. 20, 2013.

Harlan Stuart Miller, III, Parks Chesin & Walbert, P.C., Atlanta, GA, for Plaintiff.

Michelle E. Shivers, Wesley Earl Stockard, Littler Mendelson, P.C., Atlanta, GA, for Defendant.

## *ORDER*

TIMOTHY C. BATTEN, SR., District Judge.

This disability-discrimination case comes before the Court on Defendant Ethan Allen Retail, Inc.'s motion to dismiss [4].

## I. Background

### A. Statement of Facts [1]

In October 2004, Chesnut began her career at Ethan Allen, and until May 1, 2012, she worked at the retailer's store in Peachtree City, Georgia.[2] During her employment, she was promoted three times. Ultimately, she became the design center manager, effectively the store manager,

---

1. At the motion-to-dismiss stage, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to Chesnut. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009). This statement of facts is therefore derived from the complaint.

2. While the complaint refers to "Peachtree Center, Ga.," [1 at ¶ 8], all other documents refer to the store's location as "Peachtree City," [*see* 9–2 at 1; 4–1 at 13]. For this reason, the Court deviates from the complaint.

and was responsible for overseeing the store's operations.

In 2007 and 2009 Chesnut suffered on-the-job injuries that substantially impaired major life activities—walking, running, and general mobility. Despite these challenges, she had no problem fulfilling the duties and responsibilities of her position.

In 2009 Chesnut learned from her immediate supervisor, Sandy Waters, that corporate had flagged the file of a coworker who suffered an on-the-job shoulder injury. After a leave of absence of almost six months, the coworker wanted to return to work, so Chesnut discussed this with her district manager, Adam Barrier. According to him, Ethan Allen would no longer allow employees injured on the job to return to work until their injuries were fully recovered and they could lift fifty pounds.

In October 2011 Chesnut suffered another on-the-job injury in which she damaged her knee. As a result, she needed surgery, which she underwent in January 2012. Chesnut's knee injury substantially impaired major life activities, like walking, running, and general mobility. Ethan Allen was aware of her injury.

Not long after her surgery, on February 21, 2012, Chesnut's supervisor, Dave Rose, presented her with a list of alleged performance deficiencies and told her that she would be replaced as design center manager. He also said that while he did not agree with the alleged list of deficiencies, "corporate is on my back" and "you are considered an HR [r]isk." Far from deficient, Chesnut's work record was exemplary. In fact, her outstanding performance was often noted in written evaluations and compensated through bonuses.

On March 28, 2012, Chesnut learned that she was being demoted effective May 1, 2012.[3] Her new position not only carried less prestige, responsibility and authority but also had a different compensation structure. As design center manager, she received a base salary plus a bonus; her new position would be straight commission. She was also told that if she did not accept being "stepped down" (in the company's vernacular), she would be terminated.

Rather than accept the demotion, Chesnut submitted her resignation on April 30, 2012. She did so for a variety of reasons. First, the pay, prestige, and responsibilities of the "stepped down" position were inferior. Second, she knew that her disability would prevent her from performing the functions of the new position. And third, she wanted to avoid having a firing on her record. Ethan Allen accepted her resignation on May 1, 2012.

On September 28, 2012, Chesnut filed an intake questionnaire with the Equal Opportunity Employment Commission alleging disability discrimination by Ethan Allen. Just over two months later, on November 30, she filed with the EEOC a charge of discrimination against the retailer.

## B. Procedural History

On July 9, 2013, Chesnut filed this action. She alleges that Ethan Allen discriminated against her in violation of the Americans with Disabilities Act. Specifically, she contends that the retailer terminated her "based on her disability and/or record of disability, and/or perceived disability."

---

**3.** While the complaint does not state the effective date for her demotion, this information is included in her charge of discrimination that she filed with the EEOC on November 30, 2012. [4–1 at 13].

On August 5 Ethan Allen filed a motion to dismiss Chesnut's complaint, arguing that she failed to timely file her charge of discrimination with the EEOC. To support this contention, the retailer filed a copy of her EEOC charge of discrimination with its motion.

In her August 29 response, Chesnut advances several arguments. She first argues that because Ethan Allen relies on a document outside of the pleadings—her charge of discrimination—the Court may only consider it by converting Ethan Allen's motion to dismiss to a motion for summary judgment and providing the parties additional time to submit any relevant evidence and arguments; consequently, she contends that discovery is needed to determine how the EEOC processed her claim. She next argues that her charge of discrimination was timely. This is so, she contends, because her EEOC intake questionnaire constitutes a "charge" under the Supreme Court's decision in *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008). But even if it does not (since it is not verified), she seems to argue that this technical defect was cured when she later filed her charge of discrimination, which is permissible under *Edelman v. Lynchburg College*, 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002). Lastly, she argues that she should be permitted leave to amend her complaint to add allegations regarding the intake questionnaire and thus address any deficiencies therein. Along with her response, Chesnut filed a copy of her EEOC intake questionnaire.

In its September 16 reply, Ethan Allen advances four arguments. The retailer first argues that the Court need not convert its motion to one for summary judgment or permit additional discovery. It next argues that Chesnut did not complete the EEOC intake questionnaire within 180 days of the discriminatory acts she alleges therein. Nor can her November 30, 2012 charge of discrimination cure the deficiencies in the intake questionnaire. And finally, there is no reason to permit Chesnut to amend her complaint, since any amendment would be futile.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for failure to state a claim where the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir.2012). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citation omitted); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir.2012). Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

In considering a defendant's motion to dismiss under Rule 12(b)(6), the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir.2011). But the court need not accept the plaintiff's legal conclusions, nor must it accept as

true legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and ... determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937.

## III. Discussion

### A. Whether Ethan Allen's Motion to Dismiss Must Be Converted to a Motion for Summary Judgment

█ The Court must first determine whether consideration of documents outside of the pleadings—Chesnut's EEOC intake questionnaire and her charge of discrimination—requires converting Ethan Allen's motion to dismiss into one for summary judgment. The Court holds that it does not.

█ Typically, "[w]hen a court considers matters outside of the pleadings in a [Rule] 12(b)(6) motion to dismiss, the court converts that motion into a motion for summary judgment." *Johnson v. Unique Vacations, Inc.,* 498 Fed.Appx. 892, 894 (11th Cir.2012); *see also Trustmark Ins. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1267 (11th Cir.2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion.").

█ But conversion is not always required. In ruling on a motion to dismiss, the district court may consider an extrinsic document if (1) it is central to the plaintiff's claim, and (2) its authenticity is not challenged. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1379

(11th Cir.2010). Further, "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute." *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir. 1999).

In discrimination cases, the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading. *See Sessom v. Wellstar Hosp.,* 1:08–cv–2057–TWT, 2009 WL 1562876, *3 n. 1 (N.D.Ga. May 29, 2009) ("The EEOC charge is properly considered on the motion to dismiss because Plaintiff has not disputed its authenticity and refers to it in her Complaint."); *Judkins v. Saint Joseph's Coll. of Me.,* 483 F.Supp.2d 60, 62 (D.Me.2007) ("EEOC documents are central to Plaintiff's claims of sex and age discrimination."); *Secrist v. Burns Int'l Sec. Servs.,* 926 F.Supp. 823, 825 (E.D.Wis. 1996) (examining EEOC charge when determining motion to dismiss).

Here, Chesnut avers that she "timely filed *charges* of disability with the EEOC." [1 at ¶ 30 (emphasis added) ]. This is only possible if her intake questionnaire or charge of discrimination was filed within the statutory period. Moreover, these documents are central to her disability-discrimination claim because without them she fails to satisfy her prima facie burden of proof. *See Maynard v. Pneumatic Prods. Corp.,* 256 F.3d 1259, 1262 (11th Cir.2001) ("An ADA plaintiff has the burden of proving all conditions precedent to filing suit, including the condition that [s]he timely filed with the EEOC."). Further, neither party disputes the authenticity of these documents or the dates on which they were filed. Instead, they dispute whether these documents are legally sufficient to constitute a charge of discrimination within the meaning of the relevant

statute. The Court therefore holds that it may consider these documents without converting Ethan Allen's motion to dismiss into a motion for summary judgment.

## B. Procedural Requirements for Disability Claims Under the ADA

Section 706 of the Civil Rights Act of 1964[4] provides the procedures for properly filing a charge of disability discrimination with the EEOC. *See* 42 U.S.C. § 12117(a) (providing that procedures of 42 U.S.C. § 2000e–5, governing Title VII, apply to ADA claims). That section provides: "Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." *Id.* at § 2000e–5(b). But beyond this, the statute does not define "charge." *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002).

EEOC regulations set forth the basic information that charges "should contain" (1) the name, address, and telephone number of the charging person; (2) the name and address of the charged entity; (3) "[a] clear and concise statement of facts" describing "the alleged unlawful employment practices"; (4) the charged entity's approximate number of employees; and (5) a statement indicating whether the charging party as initiated state proceedings. 29 C.F.R. § 1601.12(a). But to be sufficient, the regulations require charges to contain only "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1318 (11th Cir.2001) (quot-ing 29 C.F.R. § 1601.12(b)) (internal quotation marks omitted).

Once filed, charges may be amended to clarify or amplify the allegations therein or to cure technical defects or omissions, such as failure to verify the charge. 29 C.F.R. §§ 1601.12(b). Amendments are a "clarification and amplification of the original charge where [they] only spell[ ] out in greater detail the employee's *original* allegations." *Kelly v. Dun & Bradstreet Corp.*, 457 Fed.Appx. 804, 805–06 (11th Cir.2011) (emphasis added) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 464–65 (5th Cir.1970)). Amendments affect the timeliness determination; they relate back to when the charge was first filed but only if the alleged unlawful employment acts are related to or grew out of the subject matter of the original charge. 29 C.F.R. § 1601.12(b). "[A]llegations of new acts of discrimination are inappropriate." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir.2004).

■■■ Under certain circumstances, therefore, intake questionnaires can constitute a charge: namely, where they are "verified,"[5] "include[ ] the basic information suggested by 29 C.F.R. § 1601.12(a)," and "would convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC." *Wilkerson*, 270 F.3d at 1321. But the *Wilkerson* court cautioned that it would "not treat intake questionnaires willy-nilly as charges." *Id.* at 1320. Nor are they generally "intended to function as a charge." *Bost v. Fed. Express Corp.*, 372

---

4. Pub.L. No. 88–352, § 706, 78 Stat. 253, 259–61 (codified as amended 42 U.S.C. § 2000e–5).

5. For a charge to be "verified," it must be "written under oath or affirmation," *Francois v. Miami Dade County*, 432 Fed.Appx. 819, 821 (11th Cir.2011) (citing 42 U.S.C. § 2000e–5(b); *Vason v. City of Montgomery, Ala.*, 240 F.3d 905, 907 (11th Cir.2001)), or "an unsworn declaration under penalty of perjury," 29 C.F.R. § 1601.3; *see also Wilkerson*, 270 F.3d at 1317.

F.3d 1233, 1241 (11th Cir.2004) (quoting *Pijnenburg v. W. Ga. Health Sys., Inc.,* 255 F.3d 1304, 1305 (11th Cir.2001)) (internal quotation mark omitted). Moreover, the Court's ability to review an ADA "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory,* 355 F.3d at 1280 (quoting *Alexander,* 207 F.3d at 1332) (internal quotation marks omitted).

ADA plaintiffs bear "the burden of proving all conditions precedent to filing suit, including the condition that [they] timely filed with the EEOC." *Maynard,* 256 F.3d at 1262. In Georgia, a charge of discrimination must be filed within 180 days of when "the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e–5(e)(1) (setting time-to-file limit of 180 days); *see also Wilkerson,* 270 F.3d at 1317 (concluding that Georgia's time-to-file limit is 180 days). And a charge of discrimination is considered filed upon receipt by the EEOC. 29 C.F.R. § 1601.13(a)(1).

▆▆▆ The Supreme Court suggests that determining when discrete discriminatory acts, like termination, "occurred" is straightforward: "A discrete . . . discriminatory act 'occurred' on the day that it 'happened.'" *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Although the time-to-file clock runs from the date that ADA plaintiffs received notice of the adverse employment action, each new discrete discriminatory act resets it to 180 days. *See id.* at 113, 122 S.Ct. 2061. And unless ADA plaintiffs file a charge with the EEOC before the clock on a discrete discriminatory act expires, they will "lose the ability to recover for it, regardless of whether the time-barred acts are closely related to acts alleged in a timely-filed charge." *See Ledbetter v. Goodyear Tire & Rubber Co.,* 421 F.3d 1169, 1179 (11th Cir.2005) (internal citation omitted).[6]

\* \* \*

Chesnut's complaint therefore survives Ethan Allen's motion to dismiss only if she properly filed a charge of disability discrimination with the EEOC within 180 days of May 1, 2012, the date of her termination—the only discriminatory act identified in the complaint.[7] As an initial matter, the Court finds that Chesnut's verified,[8] written charge of discrimination was filed 213 days after her termination and hence was untimely. But this is insufficient to put the Court's inquiry to rest. For while Chesnut failed to timely

---

**6.** *See also Rizo v. Ala. Dep't of Human Res.,* 228 Fed.Appx. 832, 835 (11th Cir.2007) ("Failure to file a timely charge with the EEOC [by an ADA plaintiff] results in a bar on the claims contained in the untimely charge." (citing *Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1332 (11th Cir.2000), *overruled in part on other grounds, Manders v. Lee,* 338 F.3d 1304 (11th Cir.2003) (en banc))).

**7.** Chesnut avers in her complaint: "[I] was, *in effect,* involuntarily terminated from employment on or about May 1, 2012." [1 at ¶ 24 (emphasis added)]. Whether she was *in effect* involuntarily (or constructively) terminated is a legal conclusion, couched as a factual allegation. Therefore, the Court is not required to accept it as true, *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, but has done so for purposes of this motion. And assuming *arguendo* that Ethan Allen constructively terminated Chesnut by demoting her, the Court further assumes, without deciding, that the date on which this happened was May 1, 2012 (when her resignation was accepted) rather than March 28, 2012 (when she learned that her demotion would be effective May 1, 2012).

**8.** This is because she signed it under penalty of perjury. *See* 29 C.F.R. § 1601.3 (defining *verified* as, among other things, "an unsworn declaration in writing under penalty of perjury"); *see also* note 5 *supra.*

file a charge of discrimination, she did file an EEOC intake questionnaire within 180 days of May 1, 2012. The Court's inquiry therefore turns to whether an EEOC intake questionnaire can constitute a "charge" for purposes of 42 U.S.C. § 2000e–5(b); and if so, what, if anything, must it include.

### 1. Whether Chesnut's Intake Questionnaire Constitutes a "Charge" Within the Meaning of 42 U.S.C. § 2000e–5(b)

█ Relying on *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008), Chesnut contends that her EEOC intake questionnaire constitutes a "charge." *Holowecki* involved an age-discrimination claim filed by a FedEx courier. After the courier filed suit, FedEx moved to dismiss the case, contending that she did not timely file a charge with the EEOC and that her intake questionnaire did not request EEOC action. The Supreme Court disagreed. First, it observed that "[f]or efficient operations, and to effect congressional intent, the [EEOC] requires some mechanism to separate information requests from enforcement requests." *Id.* at 401, 128 S.Ct. 1147. Recognizing a tension between that need and the congressional intent of the ADEA, the Court held that for a document to be a charge it must not only include "the information required by the regulations, *i.e.,* an allegation and the name of the charged party" but also "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402, 128 S.Ct. 1147. Applying that standard, the Court found that because the

courier submitted with her intake questionnaire a detailed, six-page affidavit that closed by asking the EEOC to "[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment," she had requested that the EEOC act. *Id.* at 405, 128 S.Ct. 1147. The Court therefore held that the intake questionnaire and affidavit constituted a charge within the meaning of the ADEA statute. The Court also noted: "Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id.* at 406, 128 S.Ct. 1147.

Chesnut argues that her EEOC intake questionnaire satisfies the *Holowecki* test. First, it includes the contact information for both her and Ethan Allen as well as a description of the alleged discrimination, thereby satisfying the minimum regulatory requirements of 29 C.F.R. 1601.12(b). Second, she expressed a desire to file a charge, and thus reasonably requested that the EEOC take remedial action, through her response to the last question on the intake questionnaire. That question asks, "Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire." Following a statement that a charge of discrimination must be filed "within 180 days from the day you knew about the discrimination" and a bolded statement that "[i]f you do not file a charge of discrimination within the time limits, you will lose your rights," it concludes: "If you want to file a charge, you should check Box 2."[9] And so she did.

---

9. The principal purpose of the intake questionnaire is not to function as a charge. *Bost,* 372 F.3d at 1241. Instead, it is "to solicit information about claims of employment dis-crimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate." Nevertheless, the form acknowledges that

Whether ADA plaintiffs who provide the minimal information required by 29 C.F.R. § 1601.12(b) and check box 2 on the intake questionnaire-actions that would appear to satisfy *Holowecki's* test—have filed a "charge" within the meaning of 42 U.S.C. § 2000e-5(b) has yet to be addressed by the Eleventh Circuit.[10] Before *Holowecki*, the circuit addressed the statutory requisites of a "charge" in *Wilkerson*. There, the court noted that the statute mandates only "that a charge be verified and in writing," 270 F.3d at 1318, and it must "contain such information and be in such form as the [EEOC] requires," 42 U.S.C. § 2000e-5(b). The EEOC thus has broad discretion to promulgate the rules governing what type of information is sufficient. *See Wilkerson*, 270 F.3d at 1318. Thus, following *Wilkerson* an intake questionnaire constitutes a "charge" within the meaning of § 2000e-5 only if it is (1) written, (2) verified, (3) includes at least the information required by 29 C.F.R. § 1601.12(b), and (4) can "convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC." *Id.* at 1320–21.

After *Holowecki*, the question is whether *Wilkerson*, particularly its verification requirement, remains good law.[11] Published circuit opinions remain binding precedent until they are overruled by the Eleventh Circuit sitting en banc or abrogated by the Supreme Court. *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n. 8 (11th Cir.2001). "[T]he doctrine of adherence to prior precedent ... mandates that the intervening Supreme Court case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of a prior panel." *Day v. Persels & Assocs., LLC.*, 729 F.3d 1309, 1324 (11th Cir.2013) (alterations in original) (quoting *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir.2009)) (internal quotation marks omitted).

In *Holowecki*, the plaintiff's claim was for age rather than Title VII or disability discrimination. This is significant because, as the Supreme Court noted, the procedural requirements for filing a charge under the ADEA are different from those applicable under the ADA.[12] *See* 552 U.S. at

---

"this questionnaire may serve as a charge if it meets the elements of a charge."

**10.** The only Eleventh Circuit opinion since *Holowecki* to confront this question passed over it. *EEOC v. Summer Classics, Inc.*, 471 Fed.Appx. 868, 871 (11th Cir.2012) (holding that the EEOC failed to show that the intake questionnaire was a sufficient filing, "[e]ven assuming *Holowecki* is applicable to a charge under the ADA").

**11.** In *Holowecki*, the Court cited *Wilkerson* and cases from other circuits that also adopted the "manifest intent" test, before noting that the filer's intent is irrelevant. What matters is whether "from the standpoint of an objective observer," and giving "a reasonable construction to its terms, the filer requests the agency to activate its machinery and remedial processes." 552 U.S. at 402, 128 S.Ct. 1147. To the extent that *Wilkerson*

stands for a similar proposition, it "would be in accord with [the Court's] conclusion." *Id.* Thus, insofar as *Wilkerson* and its progeny suggested otherwise, they would likely be abrogated by *Holowecki*. Here, however, neither party challenges the sufficiency of checking box 2; instead, the question is whether *Holowecki* abrogated *Wilkerson's* verification requirement for ADA cases.

**12.** For this reason, the Court issued a "cautionary preface."

> While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination. This is so even if the EEOC forms and the same definition of charge apply in more than one type of discrimination case.

*Holowecki*, 552 U.S. at 393, 128 S.Ct. 1147 (internal citation omitted).

393, 128 S.Ct. 1147. One key difference is that the ADEA does not require charges to be verified, whereas the ADA (borrowing Title VII's framework) does. *Compare* 29 U.S.C. § 626(d) *and* 29 C.F.R. § 1626.8(c), *with* 42 U.S.C. § 2000e–5(b) *and* 29 C.F.R. § 1601.9. Because *Holowecki* did not construe a statute requiring charges to be verified, the Court concludes that it does not abrogate or directly conflict with *Wilkerson's* holding that charges under the ADA must be verified.

As a result, Chesnut's EEOC intake questionnaire constitutes a charge only if it satisfies the *Wilkerson* test. Here, neither party disputes that the intake questionnaire was not verified. Therefore, whether Chesnut properly filed a charge with the EEOC turns, in part, on whether her verified charge of discrimination amended her intake questionnaire, thereby curing its lack of verification. The Court holds that it does not.

### 2. Whether Chesnut's Charge of Discrimination Amends Her EEOC Intake Questionnaire

■ Chesnut asserts matter-of-factly, "As discussed below, the 9/28/12 Questionnaire, subsequently 'verified' by the 11/30/12 Charge, plainly satisfied the 'charge' filing requirement." [9 at 3 (footnote omitted)]. The Court presumes that by *discussed below* she means in the footnote, because the text of her response never addresses subsequent verification. In fact, aside from this single proposition (and accompanying footnote), her response appears to place all of her "charge" eggs in the *Holowecki* basket—which the Court holds is too porous to support her contention that the intake questionnaire constitutes a "charge" under 42 U.S.C. § 2000e–5.

Neither party disputes that Chesnut's charge of discrimination was verified. *See supra* note 8. From this Chesnut concludes that "[u]nder these circumstances, the 11/30/12 charge undeniably 'relates back' to the 9/28/12 filing of the Intake Questionnaire." [9 at 3 n. 3 (citing *Edelman v. Lynchburg College*, 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002))]. But perhaps unsurprisingly, Ethan Allen challenges Chesnut's *undeniable* conclusion. The retailer argues, among other things, that Chesnut's charge is not an "amendment" because it does not "amplify" or "clarify" the intake questionnaire.

Chesnut's charge of discrimination amplifies or clarifies her intake questionnaire only if it "spells out in greater detail [her] original allegations." *Kelly*, 457 Fed. Appx. at 805–06 (citing *Sanchez*, 431 F.2d at 464–65). In the intake questionnaire, she alleges that she was discriminated against on two occasions: first, when she was presented with an inaccurate (and in her view, pretextual) list of performance deficiencies on February 21, 2013; and second, when she was informed of her demotion (effective May 1, 2012) on March 28, 2012. The intake questionnaire does not, however, allege that she resigned on April 30, 2012 (which precipitated her discharge) because of discrimination.

In fact, it is not until she filed her charge of discrimination—213 days after her discharge on May 1, 2012—that she suggests that this act was discriminatory. As for how the retailer's alleged discriminatory acts on February 21, 2012 (not even mentioned in the charge) or March 28, 2012 caused her to submit her resignation on April 30, 2012, the charge is silent. Thus, her charge does not "spell[ ] out in greater detail [her] original allegations." *See Kelly*, 457 Fed.Appx. at 805–06. Nor does this alleged discriminatory act "constitute unlawful employment practices *related to* or *growing out of*" the allegations of her intake questionnaire. *See* 29 C.F.R. § 1601.12(b) (emphasis added).

Chesnut's late-filed charge of discrimination is therefore not an amendment of her intake questionnaire, and her intake questionnaire's defective verification remains uncured. And because her charge of discrimination is not an amendment of her intake questionnaire, the allegations she makes therein do not relate back to the filing of her intake questionnaire. As a result, the timeliness of those allegations is determined based on when Chesnut filed her charge of discrimination—which was well after the 180–day clock expired. She has therefore lost the ability to recover for her termination, the discriminatory act alleged in her complaint—even if the Court assumes that it was closely related to the acts alleged in the intake questionnaire. *See Ledbetter,* 421 F.3d at 1179. Ethan Allen's motion to dismiss must be granted.

### 3. Whether Chesnut Timely Filed Her Intake Questionnaire

 Until now, the Court has assumed that Chesnut's intake questionnaire was timely because she filed it within 180 days of her alleged termination. While true, this does not *ipso facto* make it timely. Rather, it must have been filed within 180 days of when she became aware of the act that forms the basis of her disability-discrimination allegation. *See* 42 U.S.C. § 2000e–5(e). Because it was not, the Court holds that Ethan Allen's motion to dismiss should be granted—even if her charge of discrimination had amended her intake questionnaire.

As discussed, Chesnut's intake questionnaire alleges that Ethan Allen discriminated against her on two dates: February 21, 2012, when she was presented a list of alleged performance deficiencies; and March 28, 2012, when she was informed that she would be demoted effective May 1, 2012. For her intake questionnaire to have been timely, it must have been filed by September 24, 2012–180 days from the last alleged discriminatory act. *See Morgan,* 536 U.S. at 113, 122 S.Ct. 2061. Unfortunately, Chesnut filed her intake questionnaire four days late, on September 28, 2012. Consequently, her "[f]ailure to file a timely charge with the EEOC ... results in a bar on the claims contained in the untimely charge." *Rizo,* 228 Fed.Appx. at 835. Ethan Allen's motion to dismiss therefore will be granted.

### IV. Conclusion

Defendant Ethan Allen's motion to dismiss [4] is GRANTED, and Plaintiff Chesnut's complaint is DISMISSED. The Clerk is DIRECTED to close this case.